Henry Engel, Respondent, v. Fred. Dressel, Appellant; John Tiede, Interpleader.

St. Louis Court of Appeals, May 3, 1887.

1. Attachment—Defending Creditor.—A defending creditor of the defendant in attachment can make only such defences as the defendant in attachment could have made.

2. Practice—Demand—Failure to Make, no Defence.—A failure to make demand, where demand was essential at common law, can be shown in defence, only where it is set up in the answer and is accompanied by a tender of the money or property sued for.

Appeal from the Greene County Circuit Court, James R. Vaughan, Judge.

*Affirmed.*

Barnard, Boyd & Delaney, for the appellant: The facts, as set out in the record, do not constitute a case of bailment. To charge one as bailee, he must have an exclusive possession. Story on Bailments, sects. 2 and 55 ; *Nesbet v. Bank and Trust Co.*, 12 Fed. 686. Even if the evidence made out a case of bailment, the plaintiff having declared for money had and received, must be held to proof of actual delivery and actual conversion. 3 Greenl. on Evid. 117, and note ; *Kincheloe v. Priest,* 5 West. Rep. 354; s. c., 89 Mo. 240; *McCarthy v. Wolfe,* 40 Mo. 520; *Beardslee v. Richardson,* 11 Wend. 25; Edwards on Bailments, sect. 106; *Johnson v. Shader,* 3 Mo. 359. If demand and refusal is relied upon to make out a case, a personal demand must be proved. *Phelps v. Bostwick*, 22 Barb. 314.

J. T. White, for the respondent: To make out his case, *prima facie*, the plaintiff had only to show that he deposited his property with the defendant, demanded

the same, and it was refused him. The burden was, then, rightly placed upon the defendant. *Wiser v. Chesley*, 53 Mo. 547; *Huxley v. Hartzell*, 44 Mo. 370; *Battel v. Crawford*, 59 Mo. 215.

Thompson, J., delivered the opinion of the court.

The plaintiff brought this action to recover one hundred and ninety dollars, money had and received of the plaintiff by the defendant, etc. An auxiliary attachment was issued and levied upon land belonging to the defendant. The defendant failed to appear and plead, but John Tiede, another attaching creditor, appeared and defended under the statute. Rev. Stat., sect. 447. The statute provides that, "when the defendant has been notified by publication, and does not appear, any plaintiff, in the circumstances contemplated in this section, may make any defence to any previous attachment, or to the action, which the defendant might."

At the trial the plaintiff testified as follows: "I have known Fred. Dressel, the defendant, for several years. Knew him in Springfield. I worked at the woolen mills and boarded with him. I boarded with him about two weeks. I left there the last part of November, 1885. I had one hundred dollars in gold, and ninety dollars in paper. I counted the money out on his table, and put it in my trunk and locked it, and took the key. Dressel said it would be safer with him in the trunk than it would be in the bank. Nobody was present but Fred. Dressel and his wife. I then took my key and went to work at Mr. Fabel's, and went back occasionally, as I wanted clothes out of my trunk. I left the trunk there, because he said it would be safer with him than it would be in the bank. I left the house right after I put my money in my trunk. About two days afterwards I went back and got a shirt and a pair of pants. The trunk was all right. The money was there that time. About two days afterwards I went back again. The second time, I saw the trunk was broken

open and the money was gone. Dressel, himself, and wife were there the first time, I went back. The second time I went, the door was locked, and nobody was in the house. I did not get in at all that time. This was Saturday night. By the next day I got in with Mrs. Dressel. She had the key to the door; she opened the door. When we got in, there were several other trunks standing open, and my trunk was opened, too; I mean the hinges were loose, broken off. I hunted after my money and found it was gone. We then went out, and Mrs. Dressel locked the door. The woman kept the key. I never had the door key. I did not see Dressel that day; I never saw him again. Nobody had access to the room where my trunk was, but Dressel and his wife."

On cross-examination, the plaintiff also testified: "I had the woman arrested for stealing the money. I had her arrested, because her husband got the money and she knew about it, and had a twenty-dollar gold piece. I knew he had the money, because he was gone and the money was gone. I had her put in jail. I did not look in my trunk any more after I first looked in it and missed my money. I did not leave Dressel's for good, when I left it to go to Fabel's. I was going back to Springfield after I got through. I still called it my home. The trunk was not removed at all when I put the money in it. It remained in the same place. It was in the room I slept in. Mr. and Mrs. Dressel and myself all slept in one room when I was there. I kept the key to the trunk."

The evidence of Tiede, the interpleader, tended to show, that, at the time of the theft, the plaintiff accused Mrs. Dressel, and exonerated Dressel, saying that the latter was an honest man. The evidence tends to show that Dressel left Springfield at the time of the occurrence, detailed in the plaintiff's testimony, and that Mrs. Dressel, soon after, took a ticket for St. Louis. Two witnesses, for the defendant, testified, without ob-

jection, that the character of Dressel, for truth and honesty, was good.

Upon this evidence, the court gave the following instructions for the plaintiff:

"1. The court instructs the jury, that the attaching creditor, Tiede, stands exactly in the place of the defendant, and can make only such defences as the defendant could make, were the defendant present." This instruction is in accordance with the terms of the statute, above quoted, and is not complained of.

"2. If the jury believe, from the preponderance of the testimony, that the plaintiff left his money with the defendant, for safe keeping, and that the defendant converted the same to his own use, they will find the issues for the plaintiff, and return a verdict, assessing the plaintiff's damages at the sum so converted, with interest thereon, at six per cent., from the time the same was converted."

We can hardly gather, from the appellant's brief, his objection to this instruction. He argues that there was no evidence of a bailment; no delivery of money to Dressel; no possession taken by Dressel; that, in order to charge Dressel, he must have had an exclusive possession; that, there being no bailment, the plaintiff can not recover, unless it appears that Dressel converted the money to his own use, and the burden of showing this is upon the plaintiff; that the above instruction presents a case of actual conversion; and that, in that form of action, the burden was on the plaintiff. The evidence clearly shows a bailment. It shows an exclusive possession of the trunk in Dressel, during the period between the first visit of the plaintiff to Dressel's house, after leaving the trunk there, and the second visit, when the plaintiff found the trunk broken open, and its contents rifled. It is not questioned that the burden of proof is on the plaintiff to show the bailment and the conversion, and he has amply sustained the burden. It is, also, argued that, even if the evidence made a case of bail-

ment, the plaintiff, having declared for money had and received, must be held to proof of actual delivery and actual conversion.

We think he has submitted evidence to show actual delivery and actual conversion. Then, it is argued, that, demand and refusal being necessary to make out a case of conversion, a personal demand must be proved. The interpleader is not in a position to raise this question, because he has not alleged a want of demand in his answer. Rev. Stat., sect. 1018; *Battel v. Crawford*, 59 Mo. 215. But if the want of a demand were pleaded, the defence would not be available here. A depositor makes out a *prima facie* case when he proves a bailment, the demand of the thing bailed, and the refusal of the bailee to return it to him ( *Wiser v. Chesley*, 53 Mo. 547); but, obviously, where circumstances exist, which render a demand and refusal impossible, as, where the bailee has absconded with the thing bailed, and his whereabouts are unknown, it would be absurd to hold that the plaintiff can not sustain an action, by attachment, against him, the object of which is to make, out of his property, the value of the thing bailed and converted, because he can not be found to demand the return of it from him; and so the court, in the third instruction, properly directed the jury.

II. The evidence, as to the defendant's good character, was improperly admitted (*Dudley v. McClure*, 65 Mo. 241); though it is just to the learned judge, who presided at the trial, to repeat the statement that no objection was made to it. But, clearly, the evidence being incompetent, the court committed no error in refusing to instruct the jury in respect of it.

III. We can not clearly see the meaning of the error assigned, that the court ought, on the evidence, to have instructed the jury that the plaintiff was not entitled to recover. If this objection goes to the want of demand, it is untenable, because, as above shown, no objection was made, on that ground, by the answer. If

it goes to the form of the action, it would seem to be equally untenable, because, the property, charged to have been converted by the evidence, consisted of current money of the country, belonging to the plaintiff, and received by the defendant, as the fruit of his wrong, and he might well be called upon to return it, as upon an implied promise to that effect.  Beyond this, we are justified in disregarding the error, thus assigned, since, under the facts of the case, it is far too general, and does not direct our attention to any specific ground of complaint.

With the concurrence of Judge Rombauer, the judgment is affirmed.   Judge Lewis is absent.